**ABRAM et al. v. SAN JOAQUIN COTTON OIL CO.**

No. 2032–O'C.

District Court, S. D. California, Central Division.

June 3, 1942.

Jonathan H. Rowell, of San Francisco, Cal., and Louis R. Stein and George E. Bodle, both of Los Angeles, Cal., for plaintiff.

Newlin & Ashburn, by Ray J. Coleman, all of Los Angeles, Cal., for defendant.

J. F. T. O'CONNOR, District Judge.

This is a motion by the defendant, San Joaquin Cotton Oil Company, to dismiss the plaintiffs' complaint, filed under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 207 and 216(b), on various grounds hereinafter enumerated:

(1) To dismiss this action because the complaint fails to state a claim against defendant upon which relief can be granted.

(2) To order the plaintiffs to furnish a more definite statement of the following matters set forth in their complaint herein:

(a) .In paragraph III of the complaint it is alleged in general terms that the defendant, during the period in issue, has been engaged in various business activities, whereas the exact nature of each alleged business activity, the extent thereof with relation to each of the other activities, the relationship of each activity to the other, and the exact period of time during which defendant was engaged in each activity should be alleged in order to determine the applicability of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., and to thus enable defendant properly to prepare a responsive pleading.

(b) In paragraph V of the complaint it is alleged in general terms that the plaintiffs were employed by the defendant to perform certain duties over specified periods of time, but there is no allegation as to the nature and character of the particular business activity or activities, if any, in which the defendant was engaged during said periods of time; that such an allegation is necessary in order to determine the applicability of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., to thus enable defendant properly to prepare a responsive pleading.

(3) To dismiss this action to the extent that it asserts a right of recovery to alleged unpaid overtime compensation for any period preceding two years next before, the commencement of the action, said motion to be made upon the ground that the action, to said extent, failed to state a claim against defendant upon which relief can be granted in that it did not accrue within two years next before the commencement of the action and is therefore barred under the provisions of subdivision 1 of sec. 339 of the Code of Civil Procedure of the State of California.

(4) To dismiss this action to the extent that it asserts a right of recovery to liquidated damages for any period preceding one year next before the commencement of the action, said motion to be made upon the ground that the action, to said extent, fails to state a claim against defendant upon which relief can be granted in that it did not accrue within one year next before the commencement of the action and is therefore barred under the provisions of subdivision 1 of sec. 340 of the Code of Civil Procedure of the State of California.

(5) To dismiss this action as to all unnamed employees who are alleged to be similarly situated to plaintiffs and who do not, within such reasonable time as the court may fix, make themselves parties of record to this action by intervention or by written designation of one of the named plaintiffs as their agent to maintain the action for them, said motion to be made upon the ground that the complaint fails to state a claim against defendant upon which relief can be granted to such unnamed employees, and that all references to them and claims asserted on their behalf should be stricken from the complaint.

The respective contentions of the defendant in support of its motion will be considered in the order presented.

That portion of the complaint which the defendant claims does not state a cause of action reads: "Defendant San Joaquin Cotton Oil Company * * * is and at all times herein mentioned has been engaged in the business of crushing and otherwise manipulating cotton seed, flax seed, and other oil producing vegetable commodities for the purpose of extracting therefrom cotton seed oil, linseed oil and other merchantable oil, and for the purpose of producing cake meal, hulls and linters and other by-products resulting from such operation."

"For the purpose of a motion to dismiss the complaint, all facts well pleaded in the complaint must be accepted as true and correct. Butler v. Davies, 10 Cir., 109 F.2d 88; Weeks v. Denver Tramway Corp., 10 Cir., 108 F.2d 509." Berger v. Clouser, D.C., 36 F.Supp. 168, 170. Section 207 U.S.C.A., Title 29. In addition to the regulation of maximum hours and minimum pay in subdivision (a), subdivision (c) provides: "In the case of an employer engaged in * * * the ginning and compressing of cotton, or in the processing of cotton seed * * * the provisions of subsection (a) shall not apply to his employees in any place of employment where he is so engaged; and in the case of an employer engaged * * * in the first processing, within the area of production (as defined by the Administrator), of any agricultural or horticultural commodity during seasonal operations, * * * the provisions of subsection (a), during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged." The latter part of this section relating to seasonal exemptions does not appear to apply to the defendant's operations, because the pleadings do not indicate that it was engaged in first processing; nor is it necessary to decide what the area of production is for the same reason.

The primary problem then is: Was the defendant engaged in the processing of cotton seed? "A 'process' is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing." 34 Words and Phrases, Perm.Ed., p. 145. Interpretative Bulletin No. 14, paragraph 17 of the Wage and Hour Division—United States Department of Labor.

Under the title, "Processing of Cottonseed", section 17 provides: "This term includes cleaning and removing hulls and linters from the cottonseed, extracting oil therefrom and making cottonseed cake or meal. These operations may be performed simultaneously or consecutively, and one employer may perform all of them or only some of them. In any event, such operations are outside the purview of the overtime provisions. * * *" Although the exact words describing the operation of the business in which the defendant is engaged do not correspond with the statute, yet the true import of the language used in the Act, viz., "the ginning and compressing of cotton, or in the processing of cotton seed", obviously places the plaintiff within the terms of section 207, subdivision (c). "The crushing and otherwise manipulating cotton seed for the purpose of extracting cottonseed oil", etc., is a treatment of certain materials to produce a given result; hence processing.

While not binding on the court, the interpretation placed on this statute by the Wage and Hour Division charged with the administration of the act is given serious consideration. Interpretation Bulletin No. 14 of June 1940 makes the following comment following section 7(c): "Thus it will be observed that this section grants the following exemptions:" (2) "The same complete exemption where the employer is engaged in the ginning and compressing of cotton, or in the processing of cottonseed." The Bulletin further states: "Where any exemption provided by section 7(c) is applicable, there is no limit to the hours which the employees may work during the exempt period without being entitled to any overtime compensation under the act."

The plaintiffs' cause, as alleged, is not within the terms of section 207(a) of the Act, insofar as the processing of cotton seed is concerned, and the exemption in subsection (c) is applicable. Section 213, subdivision (a), Title 29, U.S.C.A., provides: "The provisions of sections 206 and 207 shall not apply with respect to * * * (10) * * * any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing,

pasteurizing, drying, preparing in their raw or natural state * * * agricultural or horticultural commodities for market."

Under the preceding provision of the Act, the defendant contends the exemption applies to its business wherein the defendant is engaged in "crushing and otherwise manipulating * * * flax seed and other oil producing vegetable commodities and for the purpose of extracting * * * other merchantable oil and for the purpose of producing cake meal, hulls and linters and other by-products from such operation."

 The language of the Act expressly requires the preparation, handling, etc., of agricultural or horticultural commodities in "their raw or natural state". Clearly the purpose of subdivision 10 of section 213 was to exempt employees and laborers coming in contact with articles in their primitive state. Section 20 of Interpretative Bulletin No. 14, supra, provides inter alia: " * * * the term 'agricultural or horticultural commodity' connotes the commodity as it comes from the farm and before any change is effected in its natural state. * * *" Section 213(a) (10) "creates an exception to the general scope of the Act, and hence is subject to strict construction". Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, at page 56. To claim the exemption allowed by 29 U.S.C.A. § 213(a) (10), the preparation, handling, etc., of the commodity must bear such a proximity to its "raw or natural state" that the activity involved will be classified as agricultural labor, within the contemplation of the Act. Irrespective of the difficulties confronted, a line of demarcation between industrial and agricultural labor is necessary. This difficulty lies, not in the language of the statute, but in its application to the particular case. The rule of construction generally followed is stated in United States v. Katz, 271 U.S. 354, 357, 46 S.Ct. 513, 514, 70 L. Ed. 986, "All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose," and cases cited therein. "Agriculture was manifestly exempted from the provisions of the Act because it was not considered feasible to regulate wages paid agricultural laborers. Different considerations apply in the case of agricultural labor than in the case of industrial labor. Agricultural labor is not subject to the evils of sweating which may be present in the factory system. There is no evil of mass employment at low wages in agriculture, nor are the same problems of working long hours indoors, nor of health and sanitation present. * * * The exemption of agricultural labor from the operation of the Act can not be cited as an argument justifying a construction which would exempt labor in an industry from its operation." Fleming v. Hawkeye Pearl Button Co., supra. The ultimate commodity produced by the defendant, here, from flax seed would result in an artificial product; its raw or natural character having been eliminated. The labor employed in this process of transformation would be classified as industrial and not agricultural. Although it is held that the operations of the defendant in processing flax seed and linseed are not exempt by virtue of section 213(a) (10) U.S.C.A., Title 29, a problem of no little difficulty reveals itself, viz.: Will the benefits under the Act apply to the whole of the defendant's business, where one indivisible part thereof is exempt from the Act, but the remainder is not, as in the instant case? In Foster v. National Biscuit Co., D.C., 31 F.Supp. 552, 553, the court said (quoting from Interpretative Bulletin No. 1, issued by the office of the General Counsel for the Wage and Hour Division of the United States Department of Labor, released October 12, 1938) : "It is noted that the coverage as described in Sections 6 and 7 does not deal in a blanket way with industries as a whole. Thus, in Section 6, it is provided that every employer shall pay the statutory minimum wage to 'each of his employees who is engaged in commerce or in the production of goods for commerce.' It thus becomes an individual matter as to the nature of the employment of the particular employee. Some employers in a given industry may not be subject to the Act at all; other employers in the industry may be subject to the Act in respect to some of their employees, and not others; still other employers in the industry may be subject to the Act in respect to all their employees, except those specifically exempted by the later provisions of Section 13(a)." Together with the other averments of the complaint, that the defendant "is and at all times herein mentioned has been engaged in

the business of crushing and otherwise manipulating cotton seed, flax seed," etc., adequately states a cause of action except for the operation relating to cotton seed which is expressly exempt.

■■■■■ Rule 12(e) of Civil Procedure Rules, 28 U.S.C.A. following section 723c, provides: " * * * a party may move for a more definite statement or for a bill of particulars of any matter which is not averred with sufficient definiteness or particularity to enable him properly to prepare his responsive pleading or to prepare for trial." "The function of a motion under this rule to compel the inclusion of further particulars in a complaint is to enable the defendant properly to prepare his responsive pleading and not to challenge the sufficiency of the claim asserted." Diesinger v. American & Foreign Ins. Co., D.C.E.D.Pa., Jan. 23, 1942, 2 F.R.D. 221, 222. In the present case, under the general allegations of the complaint, a situation may arise wherein the employees' duties relative to a certain product are exempt from the Act if performed exclusively for a specified period; whereas, if such duties were inseparably combined with operations concerning another product not exempt from the Act for the identical period, the provisions of the Act may apply to both, exempt and non-exempt employees. Fleming v. Southern Kraft Corporation, D.C., 37 F.Supp. 232. Defendant's motion for a more definite statement is granted and twenty days is allowed for such purpose.

■■■■ The plaintiff questions the propriety of the defendant's motion to dismiss, to raise the statute of limitations. What authorities there are solving this problem, are in serious conflict. There is authority holding that a motion to dismiss will not be entertained to raise the statute of limitations, operating on a cause which is barred, from facts appearing on the face of the pleading. The proper procedure is by demurrer or affirmative response in the answer. Johnson v. Wells-Lamson Quarry Co., 103 Vt. 475, 156 A. 681, 77 A.L.R. 492; 16 Cal.Jur. 603; Dirk Ter Haar v. Seaboard Oil Co. of Delaware, D.C.S.D. Cal., 1 F.R.D. 598. However, under the New Federal Rules of Civil Procedure, the general practice (supra) has been modified by reason of a construction of Rules 7(c) and 9(f). Rule 7(c) provides: "Demurrers, pleas, and exceptions for insufficiency of a pleading shall not be used." Mr. Moore, in his work on Federal Practice Under the New Rules, Vol. 1, pages 431 and 432, after pointing out the confusion and uncertainty manifesting itself by reason of the various methods employed in raising legal issues by demurrer, pleas, etc., in state practice, states: "Technical distinctions between motions, demurrers, pleas and exceptions are obviated in line with the better practice." This seems to have been the aim of Rule 7(c). To replace the function of a demurrer, a motion to dismiss has been substituted. Nicholson Transit Co. et al. v. Bassett et al., D.C., 42 F.Supp. 990; Chicago Metallic Mfg. Co. v. Edward Katzinger Co., 7 Cir., November 12, 1941, 123 F.2d 518. Rule 9(f) provides: "For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." There is a comment on Rule 9(f) in Vol. 1, Moore's Federal Practice, 595 at 597, viz.: "The rule at common law and under the codes has been subject to certain exceptions, that general averments of time and place are immaterial. Subdivision (f) changes that rule in only one respect, viz.: for the purpose of testing the sufficiency of a pleading, i. e., upon a motion to dismiss * * * time and place are material. * * * Since time is material under subdivision (f) for purposes of testing sufficiency of a pleading, a motion to dismiss because the statute of limitations has run may be utilized * * * whenever the time alleged in the statement of claim shows that the cause of action, whether ex contractu or ex delicto has not been brought within the statutory period." Cramer v. Aluminum Cooking Utensil Co., D.C., 1 F.R.D. 741; A. G. Reeves Steel Construction Co. v. Weiss, 6 Cir., 119 F.2d 472, certiorari denied 314 U.S. 677, 62 S.Ct. 181, 86 L.Ed. —; Wright v. Bankers Service Corp., D.C., 39 F.Supp. 980. 18 C.J. 1181, § 89 provides: "As a rule a motion to dismiss will be sustained where it is apparent from the face of the declaration that the suit is barred by the statute of limitations * * * although in some jurisdictions the statute must be raised by plea."

In Pearson v. O'Connor, D.C.D.C., March 19, 1942, 2 F.R.D. 521, Bailey, J., elucidates upon the rule by declaring that: "The present rules are modeled largely on the former equity rules under which the defense of the statute of limitations could be raised by a motion to dis-

miss. One of the objects of the new rules to the saving of time, and it would seem to be a useless waste of time not to entertain a motion to dismiss where a complaint shows on its face that the cause of action is barred. This defense is raised 'affirmatively' in the motion to dismiss, and it seems unnecessary to go further and raise the same defense by answer."

For an illuminating discussion on raising the statute of limitations by a motion to dismiss under the New Federal Rules, see Commentary, 3 Federal Rules Service 12b.325. Therein the writer says: "It has been generally assumed that the effect of Rule 9f is to make it possible to raise the statute of limitations by motion to dismiss for failure to state a claim (the substitute for the demurrer) where the complaint shows the statute to have run. Of course, Rule 9f does not obviate the second basis of the common law rule—that plaintiff should have an opportunity to show facts in avoidance of the statute. But the liberal provisions for amendment under Rule 15 should accord plaintiff all the opportunity he needs in this respect. A plaintiff ordinarily is not required to anticipate defenses, but where the complaint shows an apparent defense to the action, the better rule requires plaintiff to avoid the defense by allegation of further facts. At all events, to perpetuate the common law rule on this second basis would make a dead letter of Rule 9f, since the only way the 'sufficiency of a pleading' is ordinarily tested is on motion to dismiss or motion for judgment on the pleadings. If the point is not sufficiently clear on the pleadings, the court can reserve the issue until trial under Rule 12d. The fact that the statute of limitations is listed in Rule 8c as an affirmative defense is not inconsistent with this construction of Rule 9f. If the bar appears on the face of the complaint, it may be raised either by motion or in the answer; if not, it will normally be pleaded affirmatively."

 In view of the above, the question of the statute of limitations was properly raised by the defendant's motion to dismiss.

 It is conceded by both the plaintiffs and the defendant, and is also apparent from the Fair Labor Standards Act, that a statute of limitations has not been prescribed setting a time limit in which an action can be maintained under the Act. In this event section 725, U.S.C.A., Title 28, provides: "The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." Therefore, recourse must be made to the statute of limitations set forth in the California Code of Civil Procedure. The pertinent provisions asserted by the parties are: Sections 338, subdivision (1); 339(1) and 340 subdivision (1). Section 338, subdiv. (1), provides: a three year limitation for "an action upon a liability created by statute, other than a penalty or forfeiture. * * *" Section 339, subdiv. (1), provides: a two year limitation for "an action upon a contract, obligation or liability not founded upon an instrument of writing, * * *." Section 340 subdivision (1), provides: a one year limitation for "an action upon a statute for a penalty or forfeiture, when the action is given to an individual, or to an individual and the State * * *."

As to which of these sections is applicable depends upon the nature of the liability imposed. 15 New Calif.Digest (McKinney) Lim. of Actions, sec. 22.

The defendant's first contention is that the action for overtime wages is barred by section 339 subdivision (1), of the C.C.P. (supra). In support of this contention, Klotz v. Ippolito, D.C.Tex.1941, 40 F.Supp. 422, 426, is cited, and also Owen v. Liquid Carbonic Corp., D.C., 42 F.Supp. 774, of the same state. The statute under which a portion of the claims were barred in those cases provided inter alia: "Actions for debt where the indebtedness is not evidenced by a contract in writing" shall be barred two years after the accrual of the cause of action. Vernon's Ann.Civ.St.Tex. art. 5526. It should be noted that only contracts in writing are excluded by this section, and consequently all other causes based upon oral contracts or statutory liabilities are governed thereby. The statute is in blanket form. For this reason, the above cases are not authorities in favor of the defendant's position; where, under the California statute, statutory liability is expressly limited. Sec. 338 C.C.P. In the present case the liability was created by statute. This is so even

though the liability is of a contractual nat re. Platt v. Wilmot, 193 U.S. 602, 613, 24 S.Ct. 542, 546, 48 L.Ed. 809. In the last case cited the court remarks: " * * * this liability was created by statute, as it was by virtue of statutes that the contractual liability arose. The language of the section plainly includes this case. It is a liability created by the statute, because the statute is the foundation for the implied contract arising from the purchase of, or subscription for, the stock, the contract being that the holder of the stock shall be liable in accordance with the terms of the statute. * * * while the liability is contractual in its nature, it arises out of the Constitution or the statute, or from a combination of both, by virtue of the application of general principles of law to the facts in the case. Neither the Constitution nor the statute says that the liability is contractual, but, as the Constitution and statute existed, the liability arising therefrom, as against the stockholder, is because of the principle of law which works out a contractual liability upon these facts, * * *." Royal Trust Co. v. MacBean, 168 Cal. 642, 144 P. 139.

In the above cases although the subject matter of the litigation was different, the reasoning is the same. "The phrase 'liability created by statute' means a liability which would not exist but for the statute. * * *" 37 C.J. 783, § 123. "Where a duty exists only by virtue of a statute, or an obligation to pay is fixed in the act itself, the obligation is one created by statute." 16 Cal.Jur. 473. It is true many fine distinctions may be drawn in an attempt to determine the variations of a contractual liability where a statute is involved and a purely statutory liability; yet the conclusion that the obligation of the employer to pay time and one-half for overtime is statutory under the Act, is hardly escapable in view of the purpose and provisions of the Act. Therefore section 338, subdivision (1), would apply in an action to recover additional wages under the Act, and not section 339, subdivision (1). Fidelity & Deposit Co. v. Lindholm, 9 Cir., 66 F.2d 56, 89 A.L.R. 279; Banks v. Yolo County, 104 Cal. 258, 37 P. 900; Johnson v. Greene, D.C., 14 F.Supp. 945; County of Los Angeles v. Ballerino, 99 Cal. 593, 32 P. 581, 34 P. 329.

The defendant claims that the sums sought by the plaintiff as liquidated damages, under the Act, amount to a penalty and recovery thereof is barred by section 340 C.C.P. (supra). In Robertson v. Argus Hosiery Mills, Inc., 6 Cir., 1941, 121 F.2d 285, 286, there was involved the question of whether the amount designated as liquidated damages was in effect a penalty so as to give the Federal District Court jurisdiction under the Fair Labor Standards Act, by virtue of section 41(9), U.S.C.A. Title 28, irrespective of the amount involved. The court held: " * * * The Fair Labor Standards Act, the pertinent provisions of which are printed in the margin, describes the additional equal amount for which the employer shall be liable as 'liquidated damages.' Under familiar principles of law the conception of penalty is thus excluded from the provision. We see no reason for delving beneath this unequivocal term in order to spell out a meaning at variance with the intent expressed." This court approves the ruling of this case, and holds that the amount recoverable as liquidated damages does not constitute a penalty. Therefore, section 338, subdivision (1), C.C.P., would also apply. Section 216, subdivision (b), U.S.C.A., Title 29, provides: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Liability for "an additional equal amount as liquidated damages" is referable to an existing obligation and does not arise from a mere violation of the Act itself. 16 Cal.Jur. 477; Agudo v. County of Monterey, 13 Cal.2d 285, 89 P.2d 400; Phœnix Insurance Company v. Pacific Lumber Company, 1 Cal.App. 156, 81 P. 976; Chattanooga Foundry & P. Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L. Ed. 241; Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691.

The position of the defendant for a dismissal of the action as to all unnamed employees, unless they intervene herein, or designate someone in writing as their legal representative for the purposes of this action, is well taken. Lofther v. First National Bank of Chicago, D.C.Ill., November 16, 1941, 45 F.Supp. 986; Gordon v. Paducah Ice Mfg. Co., D.C.Ky., Nov.

15, 1941, 41 F.Supp. 980, 985; Brooks v. Southern Dairies, D.C., 38 F.Supp. 588; Archer v. Cornillaud, D.C., 41 F.Supp. 435, 436. The contention of the plaintiff that "The rights of such other employees to join and become parties thereto should not be precluded at this time or at any time prior to actual trial" cannot be approved by the court. To sustain this contention would mean that a score or even hundreds of employees could wait until the "actual trial" and suddenly confront the defendant with their claims without any opportunity on the part of the defendant to properly prepare for trial, to examine records to determine the employment, the time, the wage and the position of any of the claimants. Such a contention is manifestly unfair.

In accordance with the view expressed in the above cases, the plaintiffs will be allowed thirty days from the filing date hereof to join all unnamed employees, consistent with this ruling; otherwise defendant's motion to dismiss unnamed employees will be granted.